

**U.S. Department of Justice**

~~FILED~~

United States Attorney
District of Maryland

*Judson T. Mihok*
*Assistant United States Attorney*
*Judson.Mihok@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

*DIRECT: 410-209-4903*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

BY_____DEPUTY

November 3, 2014

James E. Crawford, Jr.
1435 Sulphur Spring Road
Baltimore, MD 21227

> Re:   <u>United States v. Erin Elizabeth Mali</u> MJG 14-0405

Dear Mr. Crawford:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by November 21, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

## Offenses of Conviction

1.      The Defendant agrees to plead guilty to Counts One and Four of the Indictment, which charges her with Conspiracy to Distribute and Receive Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1), and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), respectively. The Defendant admits that she is, in fact, guilty of these offenses and will so advise the Court.

## Elements of the Offenses

2.      <u>Count One-Conspiracy to Distribute and Receive Child Pornography</u>

The elements of Count One to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

First, that two or more persons entered the unlawful agreement charged in the indictment starting in or about September 2012;
Second, that the defendant knowingly and willfully became a member of the conspiracy;
Third, that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and
Fourth, that the overt act(s) were committed to further some objective of the conspiracy.

3.     Count Four-Distribution of Child Pornography

The elements of Count Four to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

First, that the Defendant knowingly distributed a visual depiction;

Second, said visual depiction was shipped or transported in and affecting interstate or foreign commerce by any means, including computer;

Third, the production of said visual depiction involved the use of a minor engaging in sexually explicit conduct;

Fourth, said visual depiction is of a minor engaged in sexually explicit conduct; and

Fifth, the Defendant knew that at least one of the individuals in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.

## Penalties

4.     The sentence provided by statute for Counts One and Four is not less than five (5) years and not more than twenty (20) years imprisonment, a $250,000 fine, and supervised release of at least five (5) years and not more than life.  In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013 per count of conviction, for $200 total, which will be due and should be paid at or before the time of sentencing.  This Court may also order the Defendant to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

a.     The Defendant understands and agrees that as a consequence of her conviction for the crimes to which she is pleading guilty, she will be required to register as a sex offender in the place where she resides, where she is an employee, and where she is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence.  Failure to do so may subject her to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.     The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

2

        a.     If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

        d.     The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

        e.     If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

        g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

        h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

The Defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt. This Office and the Defendant understand and agree that Counts One and Four would group, pursuant to the analysis of USSG §3D1.2, and accordingly, the following sentencing guidelines factors are applicable:

a.      Advisory USSG for Counts One and Four

1.      The base offense level is twenty two (22) pursuant to USSG §2G2.2(a)(2).

2.      Pursuant to USSG §2G2.2(b)(2), there is a two (2) level increase because the offense involved a prepubescent minor or a minor who had not attained the age of 12 years.

3.      Pursuant to USSG §2G2.2(b)(3)(F), there is a two (2) level increase because the offense involved distribution.

4.      Pursuant to USSG §2G2.2(b)(5), there is a five (5) level increase because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

5.      Pursuant to USSG §2G2.2(b)(6), there is a two (2) level increase because the offense involved the use of a computer.

6.      Pursuant to USSG §2G2.2(b)(7)(A), there is a two (2) levels are added as the offense involved at least 10 but fewer than 150 images.

7.      Therefore, the contemplated offense level for Counts One and Four is thirty-five (35).

4

b.    <u>Relevant Conduct-Production of Child Pornography</u>

1.    The base offense level is thirty two (32) pursuant to USSG §2G2.1(a).

2.    Pursuant to USSG §2G2.1(b)(1)(B), there is a four (4) level increase because the victim in this case was under 12 years old at the time of the offense.

3.    Pursuant to USSG §2G2.1(b)(3), there is a two (2) level increase because the offense involved distribution.

4.    Pursuant to USSG §2G2.1(5), there is a two (2) level increase because the minor was in the custody, care or supervisory control of the defendant.

5.    Therefore, the final adjusted offense level for this relevant conduct is forty (40).

c.    <u>Combined Offense Level</u>

Because the relevant conduct related to the Production of Child Pornography does not group pursuant to USSG §3D1.2, one level is added. The Distribution of Child Pornography, which has an adjusted base offense level five (5) levels lower than the Production of Child Pornography adjusted base offense level, adds one-half unit pursuant to USSG §3D1.4(b). The result is a total of 1 ½ units, which increases the Production of Child Pornography adjusted base offense level of forty (40), by one level. Therefore, the result is an adjusted base offense level of forty-one (41).

8.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty.

The final adjusted offense level, therefore, is thirty-eight (38).

9.    The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

5

10. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, there are no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines which will be raised or are in dispute.

## Obligations of the United States Attorney's Office

11. At the time of sentencing, this Office will recommend a reasonable sentence which gives due consideration to the advisory USSG range and the sentencing factors outlined at 18 U.S.C. § 3553(a).

12. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct. Should the Defendant choose to file a sentencing memorandum in this matter, the Defendant agrees to file any such memorandum ten business days prior to the date of sentencing.

## 18 U.S.C. § 3553(a)

13. This Office and the Defendant agree that both parties reserve the right to argue that this Court should sentence the Defendant to a variant sentence outside of the advisory guidelines range determined by the Court. This Office and the Defendant stipulate and agree that if either party intends to argue, pursuant to 18 U.S.C. § 3553(a), that the sentence in this case should fall outside of the advisory guidelines range based on any factor, that party will notify opposing counsel at least fourteen (14) days in advance of sentencing of the facts or issues the party intends to raise. If the party seeking the non-guideline sentence fails to provide timely notice of the intent to argue for a sentence outside the advisory guidelines range, that party will either withdraw the 18 U.S.C. § 3553(a) arguments or consent to a continuance of the sentencing date.

## Waiver of Appeal

14. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence in imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

e.     The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

## Obstruction or Other Violations of Law

15.     The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG §3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw her guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

16.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather,

7

in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Forfeiture

17.    The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from her residence on June 3, 2013, including, but not limited to: a Samsung SCH-S720C Cell Phone, HEX #A0000030FEE5B9, which had been manufactured in China, containing a 2GB Micro SD Card, which had been manufactured and assembled in Taiwan; as well as any property traceable to such property. The Defendant further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

## Restitution

18.    For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§ 2259, 3663A(b)(2) and (4). The Defendant further agrees that she will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

**Entire Agreement**

19.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

        If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

                                Very truly yours,

                                Rod J. Rosenstein
                                United States Attorney

                                By: _____
                                Judson T. Mihok
                                Assistant United States Attorney


        I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

_12/23/14_____                  _____
Date                            Erin Elizabeth Mali

        I am Ms. Mali's attorney.  I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her.  She advises me that she understands and accepts its terms.  To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

_12/23/14_____                  _____
Date                            James E. Crawford, Jr., Esq.

9

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

## ATTACHMENT A-STATEMENT OF FACTS

2014 DEC 23  PM 12: 20

CLERK'S OFFICE
AT BALTIMORE

DEPUTY

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Erin Elizabeth Mali, age 32, is a resident of Arnold, MD.

Howard James Clem, IV, a/k/a "Jaime," age 33, is a resident of Pasadena, Maryland.

MALI and CLEM meet in a mobile social networking and dating application and website in September 2012. MALI was using the user name dippo828@yahoo.com and CLEM was using the user name h.clemiv@yahoo.com.

Many of the online communications exchanged between MALI and CLEM and images sent by MALI to CLEM utilizing this mobile social networking and dating application and website focused on graphic sexual conduct involving prepubescent minors.

For example, on or about January 10, 2013, MALI, utilizing the user name Dippo828@yahoo.com, distributed a file entitled "A21"[1], which was an image file of an adult male's penis touching the vagina of a prepubescent female, to CLEM while he was utilizing user name h.clemiv@yahoo.com, and in response, CLEM sent the following three separate reply messages to MALI: "damn who's that? lucky guy. what she do", "wish was my cock. she take it in her", and "can I do that to her".

A second example occurred on or about March 7, 2013, when MALI sent CLEM a number of image files, including the following seven image files: "A12", an image file of a prepubescent female with her mouth and tongue touching the erect penis of an adult male; "A13", an image file of a prepubescent female with an adult male's erect penis penetrating her

---

[1] During the course of the investigation, the investigator abbreviated the naming convention for the files. The full title is preceded by an "a" and followed by ".jpg"; for example, file "A21" was actually entitled "a21.jpg".

vagina; "A14", an image file of a prepubescent female with an adult male's erect penis

penetrating her vagina; "A15", an image file of a nude prepubescent female focused on her

vagina with her legs spread apart and with white fluid on her vagina and belly; "A16", an image

file with an adult male's erect penis penetrating the mouth of a prepubescent female; "A17", an

image file of a prepubescent female's vagina with an adult male's erect penis touching her

vagina and a white fluid on her vagina; and "A18", an image file of an adult male's penis

penetrating a prepubescent female's vagina as the prepubescent female is straddling the adult

male. After sending these images, MALI sent CLEM engaged in the following online

discussion:

| | |
|------|------|
| MALI: | hope u enjoy |
| CLEM: | oh damn baby, any urs |
| CLEM: | fucking hot |
| MALI: | no |
| CLEM: | that's hot |
| MALI: | thought ud enjoy |
| CLEM: | hell yeah |
| MALI: | thats good |
| CLEM: | she sucked or fucked yet |
| MALI: | no |
| CLEM: | Id love her to suck on me |
| MALI: | I know |
| CLEM: | n lick all over hee lil pussy |
| MALI: | yea |
| CLEM: | Mmmmmmmm, u play any with her |
| MALI: | no |
| CLEM: | want ti |

At which point, CLEM sent MALI an image of his erect penis taken in his bathroom.

A third example occurred on April 2, 2013, when MALI sent CLEM three images of the

Victim, a 9 year old female, whom MALI and CLEM identified by name in the exchanges (but

who will be referred to as "the Victim" both here and  throughout the balance of the factual

basis):

| | |
|---|---|
| MALI: | lonely horny |
| CLEM: | awwww |
| CLEM: | wish there to help u ;) |
| MALI: | awww |
| MALI: | any hot girls |
| CLEM: | wish lol |
| CLEM: | just u and [the Victim] lol |
| MALI: | u still think about us |
| CLEM: | yeah I do baby |
| MALI: | tell me about it |
| CLEM: | just thinking about have her play with as me n u fucking |
| MALI: | mmmmm |
| MALI: | Im playing with my clit |
| ..... | |
| MALI: | I wanna watch u and [the Victim] |
| MALI: | watch her suck u |
| CLEM: | Mmmmmmmmm Id Love that |
| CLEM: | so hot |
| MALI: | taking u deep as I lick her pussy |
| CLEM: | Mmmmmmmmmm fuck yeah |
| MALI: | getting her pussy ready for ur cock. |
| CLEM: | mmm yes want it |
| MALI: | her pussys nice and wet sliding her down onto ur hard cock |
| MALI: | u filling her tiny lil pussy with ur cock |
| CLEM: | mmmmmmmmmmmm as fingering u |
| MALI: | mmmm |
| CLEM: | using ur cum to lube my cock |
| MALI: | mmmmm |
| MALI: | her bouncing on u |
| CLEM: | n her suck ur cum off my fingers |
| CLEM: | mmm yes |
| MALI: | mmmm |
| MALI: | her tight pussy around ur cock |
| CLEM: | oh yes |
| CLEM: | sucking ur titties |
| MALI: | mmmm yes |
| CLEM: | n her lil nippled |
| MALI: | oh use us |
| CLEM: | I will |
| MALI: | mmmm yes |
| CLEM: | fill her lil pussy with my cum as she stands over top ur face dripping into u |

3

| | |
|---|---|
| MALI: | oh yes |
| MALI: | tastes so good |
| CLEM: | the fuck ur ass while she's licking all over ur pussy n my balls |
| MALI: | mmmmm yes |
| MALI: | oh yes |

At which time, MALI sent CLEM a file entitled "A11", which depicts the Victim sitting

fully nude in the bathtub. CLEM replied by sending an image of his erect penis. Then MALI

sent CLEM two additional images: "A10", which depicts the Victim lying fully nude in the

bathtub with her buttocks exposed; and "A9", which depicts the Victim completely naked and

standing in a bath tub with her vagina visible. Then the following exchange ensued:

| | |
|---|---|
| CLEM: | mmmmm |
| CLEM: | can't wait to meet her |
| CLEM: | what she say when ur taking her pics |
| MALI: | she doesnt know |
| CLEM: | mmmm |
| CLEM: | she seen my pic |
| MALI: | I want a house full of young pussy for u |
| CLEM: | get her spread her legs n pussy open foe me n get pic |
| CLEM: | Mmmm baby me too |
| MALI: | yes |
| CLEM: | what say |
| CLEM: | what us shown her |
| MALI: | ur face pic she thinks ur cute |
| CLEM: | ;) aww so is she |

MALI and CLEM then discuss meeting to have sexual intercourse. CLEM wrote MALI

asking her where she wanted him to orgasm, and the following exchange occurred:

| | |
|---|---|
| MALI: | anywhere u want |
| CLEM: | mmmmmmmmmmm pussy and ass [the Victim] lick it out u |
| MALI: | mmmmm |
| CLEM: | u like that idea |
| CLEM: | I do |

A fourth example occurred on April 27, 2013, when MALI sent CLEM three images of

4

the Victim: "A1", which depicts the Victim lying fully nude in the bathtub with her buttocks exposed; "A2", which depicts the Victim sitting fully nude in the bathtub; and A3", which depicts the Victim completely naked and standing in a bath tub with her vagina visible. After receiving these three images of the Victim, CLEM responded, "she's so cute just wanna lick all over her".

A fifth example occurred on June 3, 2013, when MALI sent CLEM an image of the Victim entitled "AO" which appears to be the same image as "A3", to which CLEM responded, "Mmmmm I wanna lick that" and "Mmmmm good morning".

On or about June 3, 2013, the mobile social networking and dating application and website captured the images and communications that had been exchanged by MALI and CLEM, including those that depicted child pornography, and caused a "cybertip" to be generated and sent to the National Center for Missing and Exploited Children. As a resulted the Anne Arundel County Police Department began an investigation that culminated in a search warrant being executed on the same date. From MALI's residence, law enforcement seized a Samsung SCH-S720C Cell Phone, HEX #A0000030FEE5B9, which had been manufactured in China, that contained a 2GB Micro SD Card, which had been manufactured and assembled in Taiwan, on which were stored the visual depictions of minors engaged in sexually explicit conduct, including, but not limited to, files given the following titles: "A12", "A13", "A14", "A15", "A16", "A17", and "A18", as described above. From CLEM's residence, law enforcement recovered his Motorola XT875 Cell Phone, IMEI: 990000835445349, which had been manufactured and assembled in China, and contained a 16GB SanDisk Micro SD card, which had been utilized to exchange communications with MALI and receive the images described

5

above.

In addition, searches of MALI's account and CLEM's account on the mobile social networking and dating application and website resulted in the recovery of the images and exchanges described above.  In addition, other conversations were recovered between MALI and others on the mobile social networking and dating application and website where MALI consistently expresses a desire to role play in sexually charged chat as a minor female engaged in incest with one recurring theme being "daddys lil slut" and indicates that she can get minor females for the other individual to have sex with.  Likewise, other conversations were recovered between CLEM and other users on the mobile social networking and dating application and website where CLEM repeatedly inquires about incest scenarios focused on mothers and very young daughters, and brags about receiving oral sex from a 16 year old female.

On June 3, 2013, MALI was advised of and knowingly, intelligently, and voluntarily waived her rights pursuant to *Miranda*.  MALI agreed to an interview, which was recorded, during which she stated, in sum and substance, that she met CLEM on the website in question 8-9 months ago and knows that he lives in Pasadena, MD.  MALI acknowledged sending the pictures in question, including the pictures of the Victim, which she acknowledged all of minors under the age of 16, and which she supposed CLEM used to masturbate.  MALI indicated that she touched the Victim one time to take a picture where she was spreading the Victim's vagina apart to take a photograph at CLEM's request.

CLEM and MALI knowingly engaged in a pattern of activity involving the sexual abuse and exploitation of the Victim to engage in sexually explicit conduct for the purpose of producing the visual depictions of the Victim and to fuel their sexually charged online

discussions.   The cellular telephones used to distribute, receive, and store the images were manufactured outside Maryland.   In addition, MALI sent the images electronically via the internet.   Further, at the time of the offense, the Victim was under 12 years old, and the additional images MALI distributed also depicted minors who were prepubescent, that is younger than 12 years old.   And there were more than 10 images distributed, but less than 150 images.

I have read this statement of facts, and carefully reviewed it with my attorney.   I acknowledge that it is true and correct.

_____
Erin Elizabeth Mali

_____
James E. Crawford, Jr.
Counsel for Mali

12/23/14
Date

12/23/14
Date